# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**VERONICA LASSITER,**

    **Plaintiff,**

v.                                                       No. 17-cv-0850 JCH/SMV

**HIDALGO MEDICAL SERVICES and
DAN OTERO,**

    **Defendants.**

## ORDER DENYING DEFENDANT'S MOTION
## FOR PROTECTIVE ORDER AND TO DISQUALIFY COUNSEL

THIS MATTER is before the Court on Defendant Hidalgo Medical Services' Motion for Protective Order and to Disqualify Counsel [Doc. 66], filed on January 10, 2018. Plaintiff responded on January 17, 2018. [Doc. 70]. Defendant replied on January 31, 2018. [Doc. 74]. The Court heard argument from the parties at a hearing on the motion on March 1, 2018. Having considered the briefing, oral argument, relevant portions of the record, and relevant authorities, and being otherwise fully advised in the premises, the Court finds that Defendant's motion is not well-taken and will be DENIED.

## Background

In this action, Plaintiff sues her former employer, Hidalgo Medical Services ("HMS"), and its Chief Executive Officer ("CEO"), Dan Otero, for sexual harassment and retaliation. Plaintiff was the Chief Operations Officer of HMS. She alleges that Defendant Otero sexually harassed her and ultimately retaliated against her by terminating her employment when she

rejected his advances. Plaintiff alleges violation of Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act, among other related claims. *See* [Doc. 1].

In the course of the litigation and ongoing discovery practice, Plaintiff's counsel spoke to three current HMS employees outside the presence of Defendant's counsel: George Craig, the former Chief Information Officer and current network administrator; Jessica MacArthur, a clinic coordinator; and Michelle Molina, a billing clerk. [Doc. 66] at 5–6; [Doc. 70] at 1. Mr. Craig and Ms. Molina contacted Plaintiff's counsel, and Plaintiff's counsel initiated contact with Ms. MacArthur. Plaintiff's counsel secured affidavits from Mr. Craig and Ms. MacArthur following their conversations. *See* [Doc. 66-6]. Defense counsel apparently learned of these communications when Plaintiff's counsel submitted the affidavits as part of their supplemental Initial Disclosures on December 31, 2017. [Doc. 66] at 5; [Doc. 66-6].

Defendant contends that Mr. Craig and Ms. MacArthur are managerial employees of HMS. [Doc. 66]. Thus, Defendant claims, they are "represented persons" for the purposes of Rule 16-402 NMRA, and Plaintiff's counsel's communications with them constitute unauthorized ex parte communications in violation of that rule. Defendant requests that, as a sanction for the violation, Plaintiff's counsel be disqualified from any further involvement in the case. Defendant further requests that the affidavits be struck from the record and that several further remedial steps be ordered. *Id.* at 2–3. Plaintiff maintains, as an initial matter, that any communications with represented persons were not "knowing" in the sense required by Rule 16-402. [Doc. 70]. That is, Plaintiff's counsel believed that Mr. Craig and Ms. MacArthur were not represented persons subject to the rule, because they told Plaintiff's counsel so. Mr. Craig, Ms. MacArthur, and Ms. Molina all said that they had been told by HMS's counsel

that they were not represented. And it was Defendant Otero who told Mr. Craig the name of Plaintiff's counsel. Plaintiff argues this shows, at the very least, that there was no knowing communication with represented persons. *Id.* at 9–12. Plaintiff even suggests that defense counsel implicitly consented to the communications. Plaintiff further argues that Mr. Craig and Ms. MacArthur do not qualify as managerial employees of HMS in the first place, such that Rule 16-402 is not implicated. *Id.* at 13–19.

## Legal Standards

Motions to disqualify are governed by two sources of law. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994). First, attorneys are bound by the local rules of the court in which they appear. *Id.* In this District, the "Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court order." D.N.M.LR-Civ. 83.9; *see also Cole*, 43 F.3d at 1383. Second, federal standards also apply, and "motions to disqualify are governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." *Cole*, 43 F.3d at 1383 (internal quotations omitted). The moving party bears the burden of establishing that disqualification is warranted. *Rubio v. BNSF Ry. Co.*, 548 F. Supp. 2d 1220, 1222 (D.N.M. 2008).

Rule 16-402 of the New Mexico Rules of Professional Conduct governs communications with persons represented by counsel. It provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order. Except for persons having a managerial responsibility on behalf of the organization, an attorney is not prohibited from

3

communicating directly with employees of a corporation, partnership or other entity about the subject matter of the representation even though the corporation, partnership or entity itself is represented by counsel.

## Analysis

The parties do not dispute that Plaintiff's counsel communicated with current employees of HMS concerning the subject of the litigation, namely, Plaintiff's alleged harassment. The parties do dispute whether the communications violated Rule 16-402. Specifically, they dispute (1) whether Mr. Craig and Ms. MacArthur were "persons having a managerial responsibility on behalf of the organization," (2) whether Plaintiff's counsel "knew" them to be so represented, and (3) whether counsel for Defendant did not otherwise consent to the ex parte communications taking place. The Court finds that Defendant fails to show that Plaintiff's counsel violated Rule 16-402. The employees are not managerial employees and, even if they were, the communications were not "knowing" in the sense required for violation of the rule. Moreover, even assuming a violation did occur, Defendant does not show that disqualification is warranted as a sanction. The Court will not disqualify Plaintiff's counsel, nor order any other relief sought by Defendant.

### Mr. Craig and Ms. MacArthur do not qualify as managerial employees under Rule 16-402.

Rule 16-402 prohibits attorneys from communicating directly with current employees of a represented organization where the employee has "a managerial responsibility on behalf of the organization." The rule does not further define the term "managerial responsibility," nor have the New Mexico courts. However, without referring to "managerial responsibility" explicitly, the committee commentary to the rule provides additional guidance: "In the case of a

4

represented organization, this rule prohibits communications with a constituent of the organization who supervises, directs, or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability." Rule 16-402 cmt. 8. Likewise, federal courts have supplied standards for making such a determination. In *Hammond v. City of Junction City*, a district court looked to the "common-sense definition of 'manager'" in interpreting Kansas's analogous ethical rule and related commentary, finding that the employee in question had sufficient managerial responsibilities to so qualify. 167 F. Supp. 2d 1271, 1284–85 (D. Kan. 2001). Earlier, interpreting Oklahoma's similar ethical rule and related commentary, the Tenth Circuit held that a managerial employee is one who has "speaking authority," such that he or she can bind the represented entity in a legal sense. *Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1208–09 (10th Cir. 2000).

The parties dispute the applicable standard governing the definition of a managerial employee.[1] But the Court need not settle on any singular test to reach a decision here. The Court finds that neither Mr. Craig nor Ms. MacArthur qualifies as a managerial employee, under *Hammond*, *Weeks*, or the committee commentary to Rule 16-402.

---

[1] Defendant urges the Court to apply the "common sense" standard from *Hammond* or the "speaking authority" test from *Weeks*. *See* [Doc. 66] at 9–15, 15–18. Plaintiff argues that the committee commentary to Rule 16-402 provides the applicable standard. [Doc. 70] at 7, 12–15. Plaintiff points out that, since *Hammond* and *Weeks* were decided, New Mexico adopted the revised committee commentary to Rule 16-402 from the American Bar Association's Model Rules of Professional Conduct. *Id.* at 13–14. The revised comment suggests a narrower class of employees may be considered to have "managerial responsibility" for purposes of the prohibition on ex parte communications. For its part, Defendant maintains that Mr. Craig and Ms. MacArthur qualify as managerial employees even under the revised commentary language. *See* [Doc. 66] at 18–19.

First, the "common sense" test of *Hammond* is not as broad as Defendant suggests, and Mr. Craig and Ms. MacArthur do not qualify as managerial employees under it. In *Hammond*, the court considered whether the employee in question had "managerial responsibilities," looking to a "general, common-sense definition" of "manager." 167 F. Supp. 2d at 1285. The court found that the employee, who was the director of human resources, had such responsibilities: he supervised other employees in the department, had the authority to make hiring decisions, investigated discrimination and harassment complaints, and trained staff in the areas of diversity and sexual harassment, among many other specific responsibilities noted by the court. *Id.* at 1284–85.

Defendant urges that, under this standard, the Court need only consider whether the employees have, as a general matter, managerial job responsibilities. And Defendant argues that both Mr. Craig and Ms. MacArthur fit the bill. Defendant described Mr. Craig's numerous responsibilities relating to information technology, noting that he is "autonomous" and exercises "independent judgment" in the role. *See* [Doc. 66] at 7–8. Likewise, Defendant points out that Ms. MacArthur "supervises seven employees" and has "managerial authority to exercise independent judgment" in her role as a clinic coordinator, where she "is responsible for coordinating the daily overall operation of the front desk offices." *Id.* at 6–7.

But Defendant ignores the fact that their "managerial responsibilities," assuming their job responsibilities do in fact qualify as "managerial," in a general sense, appear to have nothing to do with Plaintiff or the subject of the litigation. These facts stand in contrast to *Hammond*, a race-discrimination case in which the managerial job responsibilities of the *human resources director* were directly related to the litigation. The managerial employee in *Hammond* was

responsible for hiring decisions and evaluating complaints of discrimination, matters that were squarely before the court in the Title VII race-discrimination class action lawsuit. As the court in *Hammond* summarized: "While acting on behalf of the City, he deals directly and repeatedly with equal employment opportunity and discrimination issues, which are the very same issues that lie at the heart of this lawsuit." *Id.* at 1289–90. The same cannot be said here. Though it may be true that Mr. Craig exercises independent judgment in his job, he does so with respect to information systems, not to Plaintiff or the matters to which her lawsuit relates. Likewise, Ms. MacArthur may supervise seven employees, but she does not supervise Plaintiff or have supervisory responsibilities relating to the litigation. Or, if she does, Defendant has not pointed it out to the Court. The employees at issue here do not have relevant "managerial responsibility" as did the employee in *Hammond*, and the Court declines to read *Hammond* as broadly as Defendant suggests.

Defendant's reliance on the *Weeks* "speaking authority" test is similarly unavailing. The "speaking authority" test "asks whether the employee has management speaking authority such that he or she could bind the [organization] in a legal evidentiary sense." *Weeks*, 230 F.3d at 1210. The court in *Weeks* specified that the relevant inquiry was not just whether the employee had "managerial authority" as a general matter, but rather whether the employee "had managerial authority *over some of the issues in controversy in the underlying litigation*." *Id.* at 1210 (emphasis added). In setting out the standard, the Tenth Circuit noted that Federal Rule of Evidence 801(d)(2)(D), governing admissions by party-opponents, may provide guidance in determining whether an employee's statement could bind the organization. *Id.* at 1209. The *Weeks* court found that the employees in that case did have such speaking authority. Namely, the

"operations supervisor," who was responsible for overseeing employees in relation to compensation and handling overtime information, had managerial speaking authority with respect to the plaintiff bus driver's overtime claims under the Fair Labor Standards Act. *Id.* at 1210. The employee's communications regarding policies for calculating overtime, including overtime owed to the plaintiff in that matter, constituted communications with a represented person.[2] *Id.*

Defendant maintains that Mr. Craig's and Ms. MacArthur's failure to report and/or investigate Plaintiff's complaints of harassment is binding on HMS, because it can be used to support Plaintiff's claims that HMS was on notice of the harassment but failed to address it. [Doc. 66] at 16–17. Additionally, with respect to Ms. MacArthur, Defendant argues that her statements regarding her investigation into possible fraudulent billing binds Defendant. *Id.* at 17–18. Ms. MacArthur found that there was no billing fraud; Defendant argues that her statement to that effect binds HMS because it establishes that the billing fraud allegations were a pretext for placing Plaintiff on leave. *Id.*

But there is a difference between a witness providing factual testimony based on his or her firsthand observations and a witness capable of providing testimony about an organization's practices or policies, or the course of action taken by the organization on a particular matter. The Court interprets *Weeks* to provide that an employee who has the authority to do the latter—to speak for the organization as to how it processes overtime claims, for example, or how it

---

[2] The court went on to find that the second employee, who had been the plaintiff's immediate supervisor and had been responsible for signing off on the plaintiff's overtime claims, also had managerial speaking authority. 230 F.3d at 1211. The court's analysis of this employee was less detailed, and the court noted that it was "not necessary" to rely on the inappropriate communications with this second employee, where the court had already found that disqualification was supported by the inappropriate communications with the first employee. *Id.*

8

responds to complaints of sexual harassment—on a matter relating to the subject of the litigation, may be a managerial employee for purposes of Rule 16-402. But an employee who merely provides factual testimony about his own experiences or observations does not bind the organization just because that factual testimony may be detrimental to the organization's case. *See Kennedy v. FedEx Freight East, Inc.*, 2008 WL 619361, at *2 (N.D. Okla. Mar. 4, 2008) (unpublished) (discussing *Weeks* and noting that employees who are "simply fact witnesses who hold factual information about what they observed others doing" are not necessarily managerial employees under the *Weeks* standard). Defendant fails to show that either Mr. Craig or Ms. MacArthur had authority to speak for HMS on the subject of its handling of harassment claims made by employees. Again, that both employees may have had managerial responsibilities in areas unrelated to the subject of the litigation is not pertinent to the present inquiry.

Finally, Mr. Craig and Ms. MacArthur do not qualify as managerial employees under the standards outlined in the committee commentary to Rule 16-402. The commentary states that the rule prohibits communications with a "constituent" of a represented organization who either: (1) "supervises, directs, or regularly consults with the organization's lawyer concerning the matter"; (2) "has the authority to obligate the organization with respect to the matter"; or (3) whose act or omission in connection with the matter maybe imputed to the organization for purposes of civil or criminal liability." Defendant argues that the third standard applies here—that HMS's liability may be imputed through the conduct of Mr. Craig and Ms. MacArthur. [Doc. 66] at 18–19. Namely, Defendant argues that their failure to ensure that an investigation took place after the alleged harassment was reported to them may serve as a basis for HMS's

liability. Additionally, as to Ms. MacArthur, Defendant maintains that her statements regarding the result of her fraud investigation imputes liability to HMS.

Again, the Court is not persuaded, for largely the same reasons as discussed above. There is a difference between an employee who observes an act or omission that may impute liability onto the organization and an employee whose own act or omission confers liability. Neither Mr. Craig nor Ms. MacArthur is an employee whose action or omission "triggered the matter in question," who "would likely be a named party but for the fact of their membership in the organization." [Doc. 70] at 17–18 (quoting Wisc. Ethics Opin., E-07-01, at 6). They are fact witnesses. That their testimony could be used to find HMS liable is distinct from their actions being imputed to HMS. The committee commentary captures the latter situation, not the former. Moreover, Plaintiff expressly disclaims any reliance on the employees' failure to report or investigate. [Doc. 70] at 18. Plaintiff maintains that HMS's liability is imputed directly by virtue of the fact that the alleged harasser is the CEO of the company. *Id.* Defendant does not provide the facts or legal authority from which the Court could conclude that Mr. Craig and Ms. MacArthur qualify as managerial employees.[3,4]

---

[3] One judge in this District has suggested that the committee commentary "imputed liability" test does not itself amount to an additional alternative standard for determining whether a witness is a managerial employee. *See McQuitty v. Tropicana Ent., Inc.*, 2014 WL 12597408, at *3 (D.N.M. Apr. 30, 2014) (unpublished).

[4] Defendant also suggests a fourth standard under which the Court might find that Mr. Craig and Ms. MacArthur are managerial employees, relying on a single district court case from the Northern District of Illinois. *See* [Doc. 66] at 12–13 (citing *Coburn v. DaimlerChrysler Serv. N. Am., LLC*, 289 F. Supp. 2d 960 (N.D. Ill. 2003)). The court in *Coburn* was considering whether to disqualify plaintiff's counsel for communicating with an assistant to the general counsel of the defendant entity. *See* 289 F. Supp. 2d at 916. The court was concerned with the assistant's access to confidential information pertaining to the case, and it adopted a modified version of a test the Seventh Circuit had employed to determine whether to disqualify an attorney who had switched from one law firm to another. *Id.* at 964. The standard set out in *Coburn* thus appears circumscribed by the particular facts of that case, and, in any event, it is not binding on this Court. The Court declines to consider it further.

### The communications were not "knowing" as required by Rule 16-402.

Rule 16-402 contains a "knowing" requirement. It prohibits communications between an attorney and a represented person where the attorney "knows [the person] to be represented by another lawyer in the matter." The rule requires "actual knowledge." *See* Rule 16-402 cmt. 9; *see also United States v. Mullins*, 613 F.3d 1273, 1289 (10th Cir. 2010) (interpreting Colorado's analogous rule of professional conduct). Still, "such actual knowledge may be inferred from the circumstances." Rule 16-402 cmt. 9. The attorney "cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious" fact of representation. *Id.* One court in this District has described the element of actual knowledge as a "very important" requirement. *Walker v. THI of N.M. at Hobbs Ctr.*, 803 F. Supp. 2d 1285, 1287 (D.N.M. 2011).

Plaintiff argues that the present facts and circumstances show that Plaintiff's counsel did not know Mr. Craig and Ms. MacArthur to be represented managerial employees, assuming they are, and that, in fact, all the information pointed to the opposite conclusion. Plaintiff maintains that the three employees with whom her counsel spoke all conveyed the same information: that they had attended a meeting with Defendant Otero and counsel for Defendant HMS; that counsel for HMS had informed them they were not represented and could talk with Plaintiff or her counsel; and that, during the meeting, Defendant Otero had provided Mr. Craig with the name of Plaintiff's counsel. [Doc. 70] at 8, 10; [Doc. 70-6]. Each of the three witnesses confirmed to Plaintiff's counsel that they were not represented. *Id.* Additionally, both Ms. Molina and Mr. Craig initiated contact with Plaintiff's counsel. *Id.* And when Mr. Craig called, Plaintiff's counsel asked a series of questions to determine whether he was a represented person for purposes of Rule 16-402. *See* [Doc. 70-6] at 1–2. Mr. Craig said he was not represented, had

been told so by defense counsel, could not bind HMS, and did not have hiring or firing authority. *Id.*

Defendant suggests that the employees' statements to Plaintiff's counsel stemmed from a "misunderstanding" of their earlier conversation with defense counsel. *See* [Doc. 74] at 2–3. Ultimately, Defendant argues, it is irrelevant that Mr. Craig initiated contact or that the employees were under the wrong impression regarding their being represented persons—consent must be obtained from the represented employee's attorney, and Plaintiff's counsel should not have relied on the witnesses for such information. Moreover, Defendant suggests, the fact of their representation was inferable from the circumstances.

The Court is persuaded by Plaintiff's argument that any communication with represented persons was not "knowing," as required to find a violation of Rule 16-402. The information conveyed to Plaintiff's counsel was that Mr. Craig and Ms. MacArthur had been told affirmatively that they were not represented by counsel for Defendant, and they believed themselves to be unrepresented. Defense counsel conceded during oral argument that the rule does not impose an affirmative duty requiring an attorney to verify whether any given employee is represented before communicating with them.[5] To be sure, counsel cannot evade the rule by ignoring the obvious fact of representation. An attorney who contacts the CEO of a represented

---

[5] In its briefing, Defendant cited a case from the New Mexico Supreme Court for the proposition that attorneys have a duty under Rule 16-402 to verify represented party status with opposing counsel. [Doc. 74] at 4 (citing *Matter of Chavez*, 1996-NMSC-059, 122 N.M. 504 (per curiam)). The court in *Chavez* found that an attorney violated Rule 16-402 when he failed to verify that the opposing party, who had initiated contact with him, was no longer represented. 1996-NMSC-059, ¶ 9. *Chavez* concerned communications with a person that the attorney knew had been represented. Furthermore, it is not clear whether the attorney asked the party about the status of his representation, or what information that party volunteered to the attorney. Moreover, the violation occurred in the midst of the attorney's manifold serious ethical violations, including making false statements and misappropriating funds. The facts of *Chavez* are distinguishable, and that court's spare analysis of Rule 16-402 is not enough for Defendant to rely on here.

organization, for example, might be said to have turned a blind eye to the fact that the CEO was a managerial employee and therefore a represented person under the rule. *See Matter of Herkenhoff*, 1993-NMSC-081, ¶ 13, 116 N.M. 622 (per curiam) (disciplining attorney for sending demand letter directly to CEO of bank, where bank was represented). But this is not that case. It was not unreasonable for Plaintiff's counsel to conclude, given the particular circumstances here, that Mr. Craig and Ms. MacArthur were not represented persons subject to the rule. It seems clear that, as counsel for Defendant acknowledged, there was a miscommunication between defense counsel and the HMS employees. But Plaintiff and her counsel should not be required to absorb the consequences of that misunderstanding. Defendant does not show that the "actual knowledge" requirement of Rule 16-402 was satisfied.

**Even if the Court were to find a violation of Rule 16-402,**
**Defendant does not show that disqualification is warranted.**

The Court has concluded that there was no violation of Rule 16-402. Even if there had been such a violation, however, Defendant has not shown that disqualification would be warranted as a sanction. Disqualification is not imposed automatically. Rather, district courts have "broad discretion" in fashioning a remedy for an ethical violation. *Weeks*, 230 F.3d at 1211 (citing *EEOC v. Orson H. Gygi Co.*, 749 F.2d 620, 621 (10th Cir. 1984)). As many courts have phrased it, disqualification is an appropriate remedy where the offending conduct "threatens to taint the underlying trial with a serious ethical violation." *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998) (internal quotations omitted); *see also Rubio*, 548 F. Supp. 2d at 1223 (collecting cases). In making such a determination, courts balance a number of factors, including society's interest in ethical conduct, the prerogative of parties to choose their own counsel, and the hardship of disqualification. *See Rubio*,

548 F. Supp. 2d at 1223–24; *Hammond*, 167 F. Supp. 2d. at 1288 (citing *Biocore*, 181 F.R.D. at 664). Courts likewise look to whether the party seeking disqualification was prejudiced by the violation. *See Biocore*, 181 F.R.D. at 668–69 (disqualification not warranted where moving party showed "no harm or prejudice" that the violation caused); *Layne Christensen Co. v. Purolite Co.*, 2011 WL 1113543, at *15 (D. Kan. Mar. 24, 2011) (unpublished) (prejudice is among factors to consider in determining whether disqualification is appropriate).

Defendant maintains that Plaintiff's counsel acquired information about matters closely related to the litigation. [Doc. 66] at 19–20. Defendant suggests that "it will likely be impossible to ascertain the potential advantage" gained by Plaintiff's counsel from the ex parte communications. *Id.* at 20. While some of the contents of the communications are obviously reflected in the affidavits, Defendant maintains that it will never know the full extent of the information shared with opposing counsel. The contact with the employees, therefore, was "inherently prejudicial." [Doc. 74] at 11. But Defendant's arguments about the harm it suffered are speculative. Defendant does not allege any particular information relating to the lawsuit that Mr. Craig or Ms. MacArthur had access to or shared with Plaintiff's counsel that would not have been shared anyway during the depositions of these witnesses. The Court will not order the harsh remedy of disqualification on mere speculation about the harm suffered. *See EEOC v. Hora, Inc.*, 239 F. App'x 728, 731 (3d Cir. 2007) (finding no prejudice where party moving for disqualification had "conceded at the hearing on the motion . . . that all of the information [counsel] received from [the represented party] was disclosed during discovery").

Defendant also suggests that prejudice arises from the fact that Mr. Craig and Ms. MacArthur provided affidavits without the benefit of first discussing certain matters with

defense counsel. But counsel for Defendant acknowledged during oral argument that there was no reason to believe that the statements the employees provided were untruthful. Moreover, if counsel does harbor any such concerns, the witnesses may be deposed as to whether the affidavits contained inaccurate statements, were the result of leading questions from Plaintiff's counsel, or were otherwise the product of outside influence. Defendant has not established any harm flowing from the ex parte communications or otherwise convinced the Court that, assuming there was a violation of Rule 16-402, the proceedings have been so tainted as to warrant disqualification.

## Conclusion

Defendant has failed to show that Plaintiff's counsel violated Rule 16-402. Nor has Defendant sufficiently established that, even assuming a violation, disqualification would be warranted as a sanction. Defendant's motion will be denied. The Court will not order disqualification or any other sanction requested by Defendant.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant Hidalgo Medical Services' Motion for Protective Order and to Disqualify Counsel [Doc. 66] is **DENIED**.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**