IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VERONICA LASSITER,

    Plaintiff,

v.                                                No. 17-cv-0850 JCH/SMV

HIDALGO MEDICAL SERVICES and
DAN OTERO,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Compel Regarding HMS's Responses to Plaintiff's First Set of Discovery [Doc. 38], filed on December 13, 2017. Defendant responded on December 27, 2017. [Doc. 51]. Plaintiff replied on January 3, 2018. [Doc. 57]. The Court heard argument from the parties at a hearing on the motion on April 4, 2018. Having considered the briefing, oral argument, relevant portions of the record, and relevant authorities, and being otherwise fully advised in the premises, the Court finds that Plaintiff's motion is not well-taken and will be DENIED.

## I. Background

In this action, Plaintiff sues her former employer, Hidalgo Medical Services ("HMS"), and its Chief Executive Officer ("CEO"), Dan Otero, for sexual harassment and retaliation. Plaintiff was the Chief Operations Officer of HMS. She alleges that Defendant Otero sexually harassed her and ultimately retaliated against her by terminating her employment when she rejected his advances. Plaintiff alleges violation of Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act, among other related claims. *See* [Doc. 1].

Plaintiff filed the instant motion to compel the following written discovery from Defendant: (1) "documents/information regarding the facts it obtained from its factual investigations into CEO Dan Otero sexually harassing multiple female employees (including Mrs. Lassiter)"; (2) "the documents evidencing the purported billing investigation Dan Otero used to place Mrs. Lassiter on administrative leave"; (3) documents/information regarding discipline of male comparators at HMS"; and (4) "employee files of other female employees who made discrimination claims against Dan Otero, and files of HMS' decision[-]makers who participated in the termination decision of Mrs. Lassiter." [Doc. 38] at 1. Defendant objected on the basis of attorney-client privilege, work product, confidentiality, and relevance.

Entry of a Stipulated Confidentiality Order [Doc. 63] resolved most of the disputes. At oral argument, the parties clarified that disputes remained as to the production of (1) the reports and factual findings from the investigations conducted by outside counsel Paula Maynes, and (2) the employee file of Cathy Diaz, the former human resources director at HMS. *See* [Doc. 86] at 1. Subsequently, Defendant agreed to produce the Diaz employee file, and did so on April 17, 2018. *See* [Doc. 90]. Therefore, only the dispute regarding the Maynes investigations remains before the Court.

## II. Analysis

Defendant brought in an outside attorney, Paula Maynes, to conduct an internal investigation into sexual harassment claims against Defendant Otero made by three female employees of HMS, including Plaintiff. [Doc. 51] at 3. Ms. Maynes prepared reports of her findings. Plaintiff's Request for Production 11 and Interrogatory 7 seek documents and information pertaining to Ms. Maynes's investigations. [Doc. 38] at 2–3. Plaintiff does not

contend that she is entitled to Ms. Maynes's legal advice to HMS, nor her mental impressions. *Id.* at 3. Rather, Plaintiff argues she is entitled to the factual information that was gathered. Plaintiff specifically requests the "facts, complaints, recording(s) of interview(s), and accounts of witnesses" interviewed by Ms. Maynes. *Id.* at 4. Defendant objects to the production of this discovery. While acknowledging that the underlying facts of the investigation are discoverable, Defendant maintains that the results of the internal investigation led by Ms. Maynes are protected on the basis of work product and attorney-client privilege.

The work product protection is set out in Fed. R. Civ. P. 26(b)(3), which provides:

> (A) *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3). Courts generally recognize two types of protected work product—fact work product and opinion work product. A party may discover fact work product, notwithstanding the protections of the doctrine, by satisfying the substantial need/undue burden test set out in Rule 26(b)(3)(A)(ii). *See Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d

3

695, 704 n.12 (10th Cir. 1998); *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006). Discovery of opinion work product, i.e., an attorney's mental impressions and legal strategy, is generally permitted only in exceptional circumstances, if at all. *See Frontier Refining*, 136 F.3d at 704 n.12; *In re Qwest Commc'ns*, 450 F.3d at 1186 (noting that some courts have found opinion work product to be "absolutely privileged," whereas fact work product "may be discoverable under appropriate circumstances").

The central purpose of the doctrine is to "shelter[ ] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). Thus, although the doctrine protects fact work product, it does not protect from discovery the underlying facts contained in the work product. This is so even if those facts are attained due to the efforts of the attorney. *E.E.O.C. v. Unit Drilling Co.*, 2014 WL 3548845, at *3 (N.D. Okla. July 17, 2014) (unpublished) (quoting 8 Charles A. Wright et. al., Federal Practice and Procedure § 2023 (3d ed. 1998)) ("The courts [have] consistently held that the work product concept [furnishes] no shield against discovery, by interrogatories or by deposition, *of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents*, even though the documents themselves may not be subject to discovery."). "Mutual knowledge of all the relevant facts gathered by both parties is essential to

4

proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

The party claiming work product protection has the burden of establishing that the material sought to be protected as work product comes within the doctrine. *Resolution Trust Corp.*, 73 F.3d at 266; *S.E.C. v. Goldstone*, 301 F.R.D. 593, 651 (D.N.M. 2014). Once this initial burden is met, the burden shifts to the opposing party to show that the substantial need/undue hardship test is satisfied. *See Sanchez v. Matta*, 229 F.R.D. 649, 656 (D.N.M. 2004); *Anchondo v. Anderson, Crenshaw & Assoc., LLC*, 256 F.R.D. 661, 672 (D.N.M. 2009).

The work product protection may be waived. A party may waive the protection by disclosing the otherwise protected material during discovery. *See In re Qwest Commc'ns*, 450 F.3d at 1186. A party also waives the work product protection when it puts the protected work product at issue by relying on it to support a claim or defense. *See Frontier*, 136 F.3d at 704 ("[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion."); *Martensen v. Koch*, 301 F.R.D. 562, 580–81 (D. Colo. 2014); *see also Unit Drilling*, 2014 WL 3548845, at *7–8 (defendant waived work product protection as to letter prepared by investigator by relying on letter as a defense before state anti-discrimination commission, and therefore was required to produce witnesses pursuant to Fed. R. Civ. P. 30(b)(6) to testify as to the bases for the factual assertions in the letter).

The contents of the Maynes reports that Plaintiff seeks, i.e. the factual summaries of the information she learned in the course of her investigations, are fact work product. Defendant has established that the reports are documents prepared by a representative of Defendant in

anticipation of litigation.[1] Thus, the reports are discoverable only if (1) Plaintiff shows a substantial need for the materials and an inability to obtain their equivalent through other means absent undue hardship, or (2) Defendant waived the protection.

Plaintiff fails to show at this time that she has a substantial need for the materials and is unable to obtain their substantial equivalent elsewhere. At oral argument, Plaintiff's counsel conceded that Defendant has now disclosed the names of the employees whom Ms. Maynes interviewed. Ms. Maynes herself is available to be deposed, and her deposition has already been scheduled. Plaintiff has not shown, therefore, that she has a substantial need for the reports or that she cannot obtain the same information through other means, namely, through deposing Ms. Maynes and interviewing or deposing the employees with whom she spoke. Although Plaintiff claims that the employees may be afraid to speak with her counsel out of fear of retaliation, her concerns are speculative and do not establish a substantial need and undue hardship. *See Goldstone*, 301 F.R.D. at 663 (notes and memoranda generated from witness interviews were protected where opposing party could depose the witnesses and obtain substantially the same information); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 684 (D. Kan. 2000) (written statements of employee witnesses were discoverable as to employees who had repeatedly failed to show up for depositions, but not as to witnesses whom plaintiff had apparently made no attempt to contact or depose); *see also id.* (collecting cases). Nor is the

---

[1] Plaintiff argues that the summaries are not protected by the work product doctrine (or attorney-client privilege) because Defendant never retained Ms. Maynes as an attorney, a fact that Defendant admitted in a related state court case. [Doc. 42] at 1–2; [Doc. 57] at 4. Therefore, Plaintiff argues, "[n]othing more is required" to find in her favor on this dispute. [Doc. 57] at 4. Plaintiff is mistaken. The work product doctrine explicitly applies to the party's "attorney" or "consultant," among others. Though she was not retained as litigation counsel for HMS, Ms. Maynes was, at the very least, a hired investigator to whom the protections of the work product doctrine extend by the clear language of Rule 26(b)(3)(A). *See Sanchez*, 229 F.R.D. at 654–55 (citing *Alexander v. F.B.I.*, 192 F.R.D. 12, 18 (D.D.C. 2000)) (work product protection extends not only to the attorneys' product but also that of their agents and investigators).

6

expense of deposing witnesses sufficient to overcome the work product protection. Plaintiff does not identify any case law on which the concerns she identifies have been held sufficient to "pierce the work product protection." Accordingly, Plaintiff does not show at this time that she has a substantial need for the reports and that the same information could not be otherwise obtained without undue hardship.[2]

Nor has Defendant waived the work product protection. Plaintiff contends that Defendant relies on the Maynes reports as part of its defense. *See* [Doc. 57] at 5–7. Plaintiff argues that Defendant cannot use the investigation's findings as a defense to Plaintiff's claims while simultaneously arguing that such information is not discoverable. The Court agrees that Defendant should not be permitted to use the investigations as both sword and shield. But there is no evidence that Defendant is doing so in this case. Plaintiff argues that Defendant must be relying on the investigations because it denies Plaintiff's allegations that (1) HMS had notice of the harassment and took no remedial action, and (2) HMS failed to investigate reports of discrimination. [Doc. 57] at 6–7. Plaintiff argues that Defendant "has no factual basis to deny these material allegations without relying on Ms. Maynes' factual investigations." *Id.* at 7. Plaintiff also points to Defendant's reliance on the investigations in a related case in state court. *Id.* at 5–6. At oral argument, defense counsel expressly disclaimed any reliance on the Maynes investigations as a defense in this case. Counsel represented that Defendant does not intend to rely on Ms. Maynes as a witness at trial. She is not listed among Defendant's witnesses in the

---

[2] Plaintiff points out that Defendant has identified as many as 15 employees whom Ms. Maynes interviewed. If Plaintiff were required to depose all of them, it would exceed the depositions allowed per the Court's Scheduling Order. *See* [Doc. 48] at 1. The parties are free to stipulate to additional depositions. The Court notes that, should Plaintiff require additional depositions for the purpose of finding out the contents of the Maynes reports, it will be difficult for Defendant to argue that Plaintiff is not entitled to expand the deposition limit.

7

parties' Joint Status Report and Provisional Discovery Plan. *See* [Doc. 28] at 20–23. Nor, as counsel stated during oral argument, does Defendant intend elicit testimony from any witness as to whether Defendant did or did not take action based on the Maynes reports.[3] That Defendant may rely on the investigations in a related case is of no consequence to their discoverability here. Defendant has not waived the work product protection here.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Compel Regarding HMS's Responses to Plaintiff's First Set of Discovery [Doc. 38] is **DENIED**.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 37(a)(5), no expenses will be awarded.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**

---

[3] Defendant claims that the Maynes investigations took place in response to Plaintiff's EEOC complaint. Defendant thus appears to argue that the alleged discriminatory actions took place prior to the investigations, making the investigations irrelevant as to whether Defendant had notice of the harassment, investigated reports of discrimination, or took any other remedial action.