# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

VERONICA LASSITER,

    Plaintiff,

v.     No. 17-cv-0850 JCH/SMV

HIDALGO MEDICAL SERVICES and
DAN OTERO,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION TO COMPEL CERTAIN TESTIMONY FROM DAN OTERO

THIS MATTER is before the Court on Plaintiff's Motion to Compel [Doc. 141], filed on July 24, 2018. Defendant Hidalgo Medical Services responded on August 7, 2018. [Doc. 156]. Plaintiff replied on August 20, 2018. [Doc. 167]. No hearing is necessary because the motion can be decided on the briefs. Having considered the briefing, relevant portions of the record, and relevant authorities, and being otherwise fully advised in the premises, the Court finds that Plaintiff's motion is not well-taken and will be DENIED.

## Background

In this action, Plaintiff sues her former employer, Hidalgo Medical Services ("HMS"), and its Chief Executive Officer, Dan Otero, for sexual harassment and retaliation. Plaintiff was the Chief Operations Officer of HMS. She alleges that Defendant Otero sexually harassed her and ultimately retaliated against her by terminating her employment when she rejected his advances. Plaintiff alleges violation of Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act, among other related claims. [Doc. 1].

To exhaust her administrative remedies, Plaintiff cross-filed a charge of discrimination with both the New Mexico Human Rights Bureau and the Equal Employment Opportunity Commission ("NMHRB/EEOC") in January of 2017. *Id.* at 6. Defendant Otero submitted a written statement in response to that charge. [Docs. 141-1, 156-1].

Otero was deposed in this lawsuit on June 27, 2018. [Doc. 156-2] at 1. Plaintiff's counsel questioned him about the written statement. Otero admitted that there was a factual inaccuracy in the statement. *Id.* at 2. The following exchange then took place:

> Q. Any other statements or testimony in this case that you're aware of that you provided that you didn't review as carefully as you should have?
>
> A. No. And the reason I bring this one up, Mr. Furth—
>
> Q. Sure.
>
> A. —is after it got sent, I remember again contacting counsel and saying, you know what?
>
> MR. BARTELL: Well, wait a minute. You have already mentioned you reached out to counsel. That is attorney-client privileged communications, and I direct you not to continue the answer.
>
> THE WITNESS: Very good. Thank you, Randy.
>
> Q. When you reached out to counsel, were you seeking legal advice about what to do?
>
> A. With this?
>
> Q. Yes.
>
> A. No.
>
> . . . .
>
> Q. Okay. And I was asking you a question came [sic] up about this statement, and you said, "I contacted counsel," and Mr. Bartell objected.

2

> The question I was going to ask you—and I asked to create a record was what—what were you going to tell counsel?
>
> MR. BARTELL: And the instruction not to further respond to that question still stands.
>
> MS. CHANEZ: And let me just add that I would also instruct you not to do that as counsel to the extent there is any question about that. I believe Mr. Bartell has a right to instruct you as well, but just so it is clear, I am instructing you not to discuss attorney-client communication.

[Doc. 156-2] at 2–3 (transcript of Otero's deposition at 344:20–347:22). As instructed, Otero refused to answer further questions about the conversations with counsel. *See id.* at 2 (Otero depo. at 345:3–346:2). Plaintiff now moves to compel Otero "to answer questions regarding his conversations with counsel regarding factually incorrect representations made in [his] signed Statement provided in response to Mrs. Lassiter's NMHRB/EEOC Charge of Discrimination[.]" [Doc. 141] at 6; *see* [Doc. 167] at 7.

## **Legal Standards**

The attorney-client privilege protects "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. United States*, 425 U.S. 391, 403 (1976). The privilege attaches to corporations as well as to individuals. *Upjohn Co. v. United States*, 449 U.S. 383, 390, 394 (1981). It promotes full and frank communications between attorneys and their clients. *See, e.g., id.* at 389; *Trammel v. United States*, 445 U.S. 40, 51 (1980); *Fisher*, 425 U.S. at 403–04. The privilege exists to protect "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. The attorney-client privilege includes communications made by a corporation's employees to its attorney acting at the direction of

3

corporate superiors to secure legal advice. *Id.* at 383; *see In re: Grand Jury Subpoenas*, 144 F.3d 653, 658 (10th Cir. 1998) (same).

While the privilege protects disclosure of substantive communications between attorney and client, "it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn*, 449 U.S. at 395. There must be a connection between "the subject of the communication and the rendering of legal advice" for the privilege to attach. *Trujillo v. Town of Taos*, No. Civ. 08-0661 ACT/RLP, 2009 WL 10700041 (D.N.M. Jan. 15, 2009) (quoting *In re Grand Jury Subpoena to Kan. City Bd. of Pub. Utils.*, 246 F.R.D. 673, 678 (D. Kan. 2007)). The privilege does not apply where the legal advice is merely incidental to business advice. *Lindley v. Life Inv'rs Ins. Co. of Am.*, 267 F.R.D. 382, 391 (N.D. Okla. 2010).

## **Analysis**

The current dispute centers on conversations between Defendant Otero, CEO of Defendant HMS, and an attorney for HMS. *See* [Doc. 156] at 2–4. As the CEO of HMS, Otero is clearly a corporate officer, and these conversations related to his job as CEO. Otero's statements to HMS's attorney are therefore subject to attorney-client privilege held by HMS. Moreover, there is no dispute that the conversations involved issues related to HMS's defending against Plaintiff's allegations of discrimination as opposed to, say, general business matters. Although Otero testified that he was not seeking legal advice himself when he spoke with HMS's attorney, the purpose of the conversations was for HMS's counsel to provide legal advice to HMS.

Plaintiff's argument that Otero was not seeking legal advice misses the mark. In a corporate context, where a corporation's attorney is interviewing an employee, the privilege is

held by the corporation; the corporation has the right to invoke or waive the privilege. *E.g.*, *Cmty. Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348–49 (1985). The focus should not be on Otero because the privilege was not his to assert or waive. *See id.* Whether he (the employee) was seeking legal advice is irrelevant, just as it was in *Upjohn*. The critical issue is whether HMS's attorney was speaking with Otero *for the purpose of providing legal services to HMS*. As one court put it:

> In some situations, every employee can be the client for purposes of confidential communications with an attorney. For instance, if someone from the outside world sues a corporation, conversations between the corporate attorney and almost any employee for the purpose of getting information necessary to defend the action may enjoy the attorney-client privilege and be immune from disclosure to the adversary. This is one of the teachings of *Upjohn* . . . .

*Amatuzio v. Gandalf Sys. Corp.*, 932 F. Supp. 113, 117 (D.N.J. 1996) (citation omitted). This, of course, makes sense. Employees who speak with corporate counsel in the course of a lawsuit rarely do so because they are seeking legal advice. They are being interviewed so that the corporation's attorney can provide sound legal advice to the corporation. The entire thrust of *Upjohn* is that such conversations are privileged.

Here, Otero communicated with HMS's counsel regarding inconsistencies in his NMHRB/EEOC statement. The instant motion does not seek information about *the inconsistencies*. Rather, it moves to compel Otero to disclose *what he told* HMS's attorney. What he told the attorney about the inconsistencies, and what the attorney asked him about the inconsistencies, obviously bears on HMS's legal strategy. *See United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998) ("In order to be covered by the attorney-client privilege, a communication between a lawyer and client must relate to legal advice *or strategy* . . . ." (emphasis added)). Though Otero stated that he was not seeking legal advice, Otero's opinion

5

on what constitutes "legal advice" is not conclusive, nor does attorney-client privilege require an express statement that the employee sought legal advice. Other courts deciding similar issues have held that attorney-client communications regarding information relevant to the client's claim or defense are privileged. *See Mendenhall v. Am. Booksellers Ass'n, Inc.*, No. 88 Civ. 8998 (KTD), 1990 WL 422415, at *3 (S.D.N.Y. May 1, 1990) (holding that when defendant company's Senior Vice President spoke with corporate counsel regarding information relevant to the case, the fact that nobody "specifically request[ed] legal advice on the issue about which [the attorney] sought information" was "immaterial" because the attorney would use the information to provide legal advice to the corporate client); *Lapenna v. Upjohn Co.*, 110 F.R.D. 15, 21–22 (E.D. Pa. 1986) (holding that privilege likely barred a deposition question asking what discussions the witness had with counsel about previous testimony).

Considering the principles in *Upjohn*, Otero's status as the CEO of HMS, and the context of his communications with HMS's counsel, the conversations are privileged. Of course, Plaintiff's counsel is entitled to question Otero on the underlying facts of the case. For example, had Otero testified that he realized his statement was incorrect based on something someone else had told him, Plaintiff's counsel could have asked him who that was. But once he crossed into the substance of conversations with HMS's counsel, he crossed the line into privileged territory. Defendants' counsel properly objected and instructed Otero not to testify about the conversations.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Compel [Doc. 141] is **DENIED**.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 37(a)(5), reasonable expenses are **AWARDED** to Defendant Hidalgo Medical Services. Defendant must file an affidavit of such expenses, including attorney's fees, no later than **September 10, 2018**. Plaintiff shall have until **September 17, 2018**, to object to the amount and/or reasonableness of the expenses requested.

**IT IS SO ORDERED.**

                                        **STEPHAN M. VIDMAR**
                                        **United States Magistrate Judge**